IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Nickolas Godfrey, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:20-cv-2504-TMC |
| | ) | |
| vs. | ) | |
| | ) | |
| Kilolo Kijakazi[1], Commissioner of | ) | **ORDER** |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Nickolas Godfrey ("Plaintiff") brought this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA" or the "Act"). (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the Commissioner's decision be affirmed. (ECF No. 29). Plaintiff filed objections to the Report, (ECF No. 35), and the Commissioner replied, (ECF No. 36). This matter is now ripe for review.

**I. Background**

A. Agency Decision

Plaintiff worked as a delivery driver, pool installation servicer, warehouse manager and warehouse worker, last working on August 14, 2015, the alleged onset date of his disability. (ECF No. 11 at 3). Plaintiff was 35 years old at the time of the alleged onset. *Id.* Plaintiff applied for

---

[1] On July 9, 2021, Kilolo Kijakazi was named the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted as the defendant in this action. *See also* 42 U.S.C. § 405(g) (providing that action survives regardless of any change in the person acting as the Commissioner of Social Security).

DIB in August 2017, and his application was denied initially and upon reconsideration. Plaintiff requested a review by an administrative law judge ("ALJ"), and a video hearing was conducted at which Plaintiff and vocational expert Kassandra L. Humphress testified.

Subsequently, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act and denying Plaintiff's claim. (ECF No. 10-2 at 15–27). Applying the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)(4),[2] the ALJ determined at the first step that Plaintiff "has not engaged in substantial gainful activity since August 14, 2015, the alleged onset date." *Id*. at 20. Proceeding to the second step, the ALJ found that Plaintiff has the following severe medically determinable impairments that significantly limited his ability to perform basic work activities: degenerative disc disease status-post L5-S1 fusion, and migraines. *Id*. The ALJ also determined that Plaintiff suffered from chronic lacunar infarct, gastroesophageal reflux disease, and dermatitis, but that these impairments were "nonsevere" as defined by the Act. *Id*. at 21. Additionally, the ALJ found that Plaintiff suffered from the medically determinable mental impairment of anxiety but that Plaintiff's anxiety "does not cause more than minimal limitation in [his] ability to perform basic mental activities and is therefore nonsevere." *Id*. at 21–22. Moving on to the third step, the ALJ concluded, in light of these findings, that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 22.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff could "perform light work as defined in 20 CFR 404.1567(b)" with the following exceptions:

---

[2] *See Halperin v. Saul*, 855 Fed. App'x 114, 115 (4th Cir. 2021) ("Regulations promulgated by the Social Security Administration establish a 'five-step sequential evaluation process' that ALJs must follow when determining whether a claimant is disabled within the meaning of the Social Security Act and its regulations.").

> [Plaintiff] can never climb ladders, ropes, or scaffolds; [can] occasionally stoop and crouch; [can] frequently climb ramps or stairs; [can] frequently kneel or crawl; may need to alternate walking and standing with sitting for ten minutes in the morning and the afternoon in addition to the normal breaks; may need to take pain and anti-inflammatory medications while at work; must observe hazard precautions from heights, open flames, dangerous machinery and exposed electrical currents; may be off task up to 10% of the day due to back, leg, and headache pain interfering with concentration, persistence, and pace; and may miss up to one day every two months for symptoms and treatment associated with migraine headaches.

*Id*. at 22–25.

At the fourth step, the ALJ determined that Plaintiff, assuming the foregoing RFC, "is unable to perform past relevant work as actually or generally performed." *Id*. at 25. Finally, at the fifth sequential step, the ALJ concluded that, based on Plaintiff's age, education, work experience, and RFC, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as mail sorter, office helper, and garment sorter. *Id.* at 26. Therefore, the ALJ held that Plaintiff has not been disabled since August 4, 2015 and denied his claim. *Id*. On January 3, 2019, the Appeals Council declined Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. *Id*. at 2–4.

B.  Review by the Magistrate Judge

In the Report, the magistrate judge concluded, and recommended the court find, that the Commissioner's decision is based on substantial evidence and is free of legal error. (ECF No. 29 at 20). The magistrate judge rejected Plaintiff's contention that the ALJ erred in failing to explain why one of the limitations recommended by Dr. Sorrow, a consulting psychological examiner, was not adopted in the assessment of Plaintiff's RFC. *Id*. at 5–15.[3] Plaintiff argued that the ALJ was

---

[3] Prior to issuing his Report, the magistrate judge conducted a hearing in this case, (ECF No. 20), following which he directed the parties to submit supplemental briefs on the issue of whether an ALJ is required under 20 C.F.R. § 404.1520c to adopt or address every limitation assessed by a medical source in an opinion that the ALJ found to be

3

required to explain specifically why he did not include in the RFC assessment Dr. Sorrow's notation that Plaintiff's "behavior during the examination, his functional assessment, and his MMSE score . . . indicate that he is probably able to pay attention and concentrate at a level to perform simple tasks and follow basic instructions." (ECF No. 11 at 35–36); see also (ECF No. 29 at 11). The magistrate judge disagreed, concluding that under the "source-level articulation" requirement set forth in the regulations, "when a medical source provides multiple medical opinions or prior administrative medical findings, ALJs will address the collective opinions and findings from that medical source together in a single analysis based on the factors set forth in 20 CFR § 404.1520c." (ECF No. 29 at 11). The magistrate judge then found,

> [T[he ALJ addressed the medical source at issue, Dr. Sorrow (Tr. 22). The ALJ then detailed many of Dr. Sorrow's findings (*id*.). Additionally, the ALJ evaluated and explained the persuasiveness of Dr. Sorrow's findings (Tr. 23–24). Specifically, the ALJ found that Dr. Sorrow's findings regarding the plaintiff's activities of daily living, social functioning, and concentration were persuasive because they were consistent with the record at the hearing level and consistent with the plaintiff's testimony (*id*.). Consequently, despite the plaintiff's arguments to the contrary, the court is not "left to guess" how the ALJ arrived at his decision, but rather, the ALJ adequately engaged in a source-level articulation of Dr. Sorrow's findings so as to allow [for] meaningful judicial review.

*Id*. at 11–12.

The magistrate judge further rejected Plaintiff's contention that the ALJ committed error by making misstatements of fact regarding Plaintiff's gait and nerve pain. *Id*. at 5, 15–17. Plaintiff argued the ALJ's statement that the treatment records suggested Plaintiff's "gait was normal and coordination was normal" amounted to a misstatement of fact because there were some records suggesting his gait was abnormal. (ECF No. 11 at 37); see also (ECF No. 29 at 15). The magistrate

---

persuasive, (ECF No. 21). Both Plaintiff (ECF No. 26) and the Commissioner (ECF No. 25) submitted timely responses.

4

judge, however, found that this was not a *misstatement* because treatment records, in fact, reflected that "[P]laintiff's gait was characterized as normal" by Dr. Warner and that "a review of the record reflects at least twenty instances in which it was noted that the plaintiff walked with a normal gait." (ECF No. 29 at 15). Additionally, the magistrate judge found Plaintiff has failed to show that, even if these statements were error, the ALJ would have reached a different result. *Id*. at 16.[4]

Finally, the magistrate judge addressed Plaintiff's argument that the ALJ made "internally inconsistent findings regarding the plaintiff's nonproductive time." *See* (ECF Nos. 11 at 35–38; 29 at 5, 17–19). By Plaintiff's reckoning, the ALJ's RFC assessment allotted nonproductive time of twenty hours per month. (ECF No. 11 at 37–38). Plaintiff argued that the ALJ's RFC assessment of 20 nonproductive hours conflicts with Social Security Ruling ("SSR") 96-8p which requires the ALJ to "discuss the individual's ability to perform sustained work activities . . . on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." (ECF No. 29 at 5). The magistrate judge, however, "decline[d] to negate the vocational expert's testimony that an individual with the plaintiff's vocational background and RFC could perform the jobs identified based solely on the plaintiff's conclusory allegation that the testimony was in error according to his calculations." *Id*. at 19. The Report elaborated further as follows:

> The plaintiff has failed to cite any authority for the proposition that this amount of nonproductive time undermines the vocational expert's testimony or that the ALJ made an internally inconsistent finding by including these limitations in the RFC. Rather, the undersigned finds that the ALJ's decision is supported by substantial evidence. The ALJ included the limitations regarding nonproductive time in the hypothetical posed to the vocational expert and inquired

---

[4] The magistrate judge also rejected Plaintiff's argument to the extent he suggested the ALJ made a factual misstatement by noting that a treating physician found Plaintiff's pain was "not due to any external nerve compression and that no nerve compression was demonstrated on an MRI." (ECF Nos. 11 at 37; 29 at 16–17). The magistrate judge explained that the ALJ was merely quoting "part of the physician's findings" and, therefore, did not constitute "a misstatement of fact, as this statement is in the record." (ECF NO. 29 at 16). Further, the Report explains, "the fact that the plaintiff's pain was generated from within the nerve and not due to any external nerve compression is not in conflict with what the ALJ included in his decision, which was merely that the plaintiff's pain was not due to external nerve compression." *Id*.

5

> about the vocational expert's training and experience. Based on this experience, the vocational expert concluded that a hypothetical individual in the plaintiff's position was capable of performing jobs that exist in significant numbers in the national economy. Therefore, the undersigned finds that substantial evidence supports the decision and recommends that the district court affirm the ALJ's decision.

*Id*.

As previously noted, Plaintiff filed objections to the Report, (ECF No. 35), and the Commissioner replied, (ECF No. 36). The court turns to consider these.

## II. Standard of Review

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g)."Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that [the Commissioner's] conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

The purpose of magistrate review is to conserve judicial resources. *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). Thus, although the recommendations set forth in the

Report have no presumptive weight, and this court remains responsible for making a final determination in this matter, *see Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)), the court is charged with making a *de novo* determination of only those portions of the Report to which a specific objection is made. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the proposed findings and recommendations." (emphasis added)). On the other hand, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). Thus, "[a] party's objection to a magistrate judge's report must be 'specific and particularized' in order to facilitate review by a district court." *Midgette*, 478 F.3d at 621.

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap*, 288 F. Supp. 3d at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Similarly, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g., Frazier v. Wal-Mart*, C.A. No. 6:11-1434-MGL, 2012 WL 5381201, at *1 (D.S.C. Oct. 31, 2012) (noting that "almost

7

verbatim restatements of the arguments made in previously ruled upon discovery motions" are not specific objections); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered by the Magistrate Judge"). Thus, a *de novo* review is wholly unnecessary for a district court to undertake when a party seeks to rehash general arguments that were already addressed in a magistrate judge's report. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see also Dandy v. Berryhill*, 6:17-cv-331-BHH, 2018 WL 4610757 (D.S.C. Sept. 26, 2018); *Butler v. Berryhill*, No. 4:16-cv-03209-JMC, 2018 WL 1556188, at *1 n.3 (D.S.C. Mar. 30, 2018) ("The court does not need to conduct a de novo review of objections presented in the form of '[complete statements] of arguments already made ... as these objections never cite specific conclusions of the [report] that are erroneous.'" (quoting *Smith v. City of N. Charleston*, 401 F. Supp. 2d 530, 533 (D.S.C. 2005)). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015).

### III. Discussion

First, the court notes that various sections in Plaintiff's objections have been lifted verbatim from the briefs Plaintiff submitted to the magistrate judge in this case. *Compare* (ECF No. 26 at 2–3, 4–7 (Plaintiff's supplemental brief submitted to magistrate judge)), *with* (ECF No. 35-1 at 1–4, 10–11 (Plaintiff's objections). The court conducted a status conference in this case on August 27, 2021, prior to the entry of the Report and well in advance of the date that Plaintiff filed his objections. (ECF No. 27). During this conference, the court "reminded the parties of the standard

8

for filing proper objections to the magistrate judge's Report . . . , particularly the requirement to identify with specificity any error in the magistrate judge's findings, analysis, or recommendations to which the party objects" and advised "that any non-specific objections which fall below this standard, including objections repeating arguments previously presented to and considered by the magistrate judge or those which merely state a party's disagreement with the magistrate judge's recommended outcome without identifying any particular error in the Report, [would] not be considered by the court." (ECF No. 28). Nonetheless, as noted, the court has been presented with objections that, in part, regurgitate arguments already presented to and considered by the magistrate judge. *See* (ECF No. 35). In fact, Plaintiff acknowledges in his objections that he is not permitted to restate his arguments but states that he has had to repeat some of the "steps" in order to provide context and suggests that if the court "would prefer us to omit the steps he does not dispute" it and the court should "consider them omitted." (ECF No. 35 at 2 n.2). Requesting the court to dig through the objections to identify the findings or conclusions in the Report to which Plaintiff takes issue is counterproductive and undermines the purpose of magistrate review as set forth at length above.

With respect to the objections that were not reproduced from earlier briefs, the court notes Plaintiff uses a scattergun approach that basically rehashes his previous argument to the magistrate judge relating to Dr. Sorrow's assessment regarding Plaintiff's probable concentration level.[5] Plaintiff argues that the ALJ necessarily "adopted" Dr. Sorrow's assessment that Plaintiff "is probably able to pay attention and concentrate at a level to perform simple tasks and follow basic instructions," which, according to Plaintiff, would preclude his ability to perform the jobs identified by the vocational expert. (ECF No. 35 at 2–5). Plaintiff claims that because the ALJ

---

[5] Plaintiff does not challenge the magistrate judge's conclusions regarding the ALJ's statements on Plaintiff's gait, (ECF No. 29 at 15–17), or the ALJ's allotment of nonproductive time in the RFC assessment, *id*. at 17–19.

9

stated "Dr. Sorrow's assessment and information regarding the claimant's activities of daily living, social functioning, and concentration were consistent with the record . . . and persuasive," (ECF No. 10-2 at 24–25), the ALJ must have explicitly *adopted* everything in the assessment, (ECF No. 35 at 2).

The court disagrees. As explained by the Commissioner, although the ALJ found Dr. Sorrow's opinion "persuasive," it is clear such an assessment merely "informed the ALJ's residual functional capacity assessment," but did not dictate it. (ECF No. 36 at 6). The ALJ's decision reflects that the ALJ fully *considered* all of Dr. Sorrow's findings, such as that Plaintiff "has not had any mental health treatment"; "was oriented to place, situation, time, and person"; had "though processes [that] were intact" and speech that "was reality based"; "denied feeling anxious or depressed"; possessed a driver's licenses and did "some driving"; was able to "use a cell phone, social media, and make his own appointments"; performed chores such as walking the dog; and attended church and went out socially on occasion. (ECF No. 10-2 at 23). The ALJ ultimately found Dr. Sorrow's conclusion that "claimant demonstrated no mental health issues that should interfere with his ability to work"—based on an assessment of Plaintiff's daily activities, social functioning, and concentration—was consistent with the record and Plaintiff's testimony. *Id*. at 24–25. As the Commissioner suggests, "there is no rule or regulation that simply because the ALJ finds a medical opinion generally persuasive, he must include each and every aspect of the medical opinion in his RFC assessment." (ECF No. 36 at 6).

This objection overlaps with Plaintiff's argument regarding the ALJ's failure to specifically address, in determining Plaintiff's RFC, Dr. Sorrow's assessment of a "probable" limitation to simple tasks and basic instructions. As explained above, this argument was addressed at length by the magistrate judge in his thorough Report which concluded that "the ALJ adequately provided a

10

source-level articulation as required by the regulations." (ECF No. 29 at 11). To the extent that Plaintiff raises this argument again in his objections, he has offered the court no basis for departing from the analysis, conclusions, and recommendations of the magistrate judge. Indeed, courts have rejected this precise argument for same reasons articulated by the magistrate judge in the Report. *See, e.g.*, *Angela D. v. Kijakazi*, No. 3:20-cv-566 (DJN), 2021 WL 4269361, at *7 (E.D. Va. Sept. 20, 2021) (rejecting the contention that the ALJ's decision was not supported by substantial evidence where the ALJ failed to provide an explanation of the exclusion of certain limitations in a medical source that was nonetheless found to be persuasive). As explained in *Angela D.*, "an ALJ failing to address a particular medical opinion but addressing the overall persuasiveness of the authority complies with 20 C.F.R. § 404.1520c" where "the ALJ thoroughly explain[s] the supportability and consistency of [the source]." *Id*.[6]

Plaintiff's remaining objections—to the extent they do not simply repeat his previous arguments—have been considered and rejected by the court and do not merit extended discussion. For example, Plaintiff claims (ECF No. 35 at 3) the magistrate judge made a factually incorrect statement in the Report when he noted "the ALJ did not discuss [the] facet of Dr. Sorrow's opinion" indicating "that [Plaintiff] is probably able to pay attention and concentrate at a level to perform simple tasks and follow basic instructions," (ECF No. 29 at 7). This objection is puzzling

---

[6] Plaintiff appears to object to the magistrate judge's observation that there is no *binding* caselaw directly on point regarding the issue of "whether an ALJ is required to articulate why he or she did not adopt every recommended limitation by each medical source." *See* (ECF No. 35 at 9–10); see also (ECF No. 29 at 7). Plaintiff argues that *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984), and the Act itself provide binding authority. (ECF No. 35 at 10). *Chevron* is best known for establishing a two-part test for evaluating agency interpretations of law, *see* 467 U.S. at 842; specifically, the Court in *Chevron* was presented with an interpretation question regarding the Clean Air Act, *id*. at 840. Plaintiff has not explained to this court how *Chevron* provides binding guidance for the resolution of this issue.

The court notes that the magistrate judge carefully considered the authority offered by Plaintiff in his supplemental brief on the issue of whether an ALJ is required to adopt every limitation assessed by a medical source that the ALJ otherwise finds "persuasive" or to articulate why any such limitation was not adopted. (ECF No. 29 at 7–8). The court agrees with the magistrate judge's reading and application of the regulation, and none of the caselaw cited by Plaintiff in his objections require the court to deviate from this conclusion.

11

since not only is the magistrate judge's statement demonstrably true, but Plaintiff's primary contention of error hinges on the fact that the ALJ did not mention this limitation in assessing Plaintiff's RFC.

## IV. Conclusion

In sum, the court agrees with the magistrate judge that the Commissioner's decision is supported by substantial evidence and overrules Plaintiff's objections. The court, therefore, **ADOPTS** the Report (ECF No. 29) and incorporates it herein. The court agrees with the recommendations of the magistrate judge and, accordingly, **AFFIRMS** the decision of the Commissioner.

**IT IS SO ORDERED.**

s/Timothy M. Cain  
United States District Judge

Anderson, South Carolina  
March 30, 2022